UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | | |
|---|---|---|
| CATHY AREU, | : | |
| | : | |
| Plaintiff, | : | Civil Case No. 1:20-cv-08678-RA |
| | : | |
| v. | : | |
| | : | |
| FOX NEWS NETWORK, LLC, ED HENRY, | : | |
| SEAN HANNITY, TUCKER CARLSON and | : | |
| HOWARD KURTZ, in their individual and | : | |
| professional capacities, | : | |
| | | |
| Defendants. | | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS FOX NEWS NETWORK,
LLC, TUCKER CARLSON, SEAN HANNITY, AND HOWARD KURTZ'S MOTION TO
DISMISS AMENDED COMPLAINT OF PLAINTIFF CATHY AREU**

---

October 19, 2020

Anthony J. Dick
J. Benjamin Aguiñaga
Ariel N. Volpe
JONES DAY
51 Louisiana Ave., NW
Washington, DC 20001
Tel. (202) 879-3939
Fax. (202) 879-1700
E-mail: ajdick@jonesday.com

Kathleen M. McKenna
Lloyd B. Chinn
Keisha-Ann G. Gray
Danielle J. Moss
Yonatan L. Grossman-Boder
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036-8299
Tel. (212) 969-3000
Fax. (212) 969-2900
E-mail: KMcKenna@proskauer.com

*Attorneys for Defendants Fox News Network, LLC, Sean Hannity,
Tucker Carlson, and Howard Kurtz*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ................................................................................................................ 2

    A.    Areu's Original Complaint .................................................................................. 2

    B.    The Claims in the Operative Complaint ............................................................. 3

STANDARD OF REVIEW ................................................................................................ 5

ARGUMENT ..................................................................................................................... 5

I.     Areu's Claims Should Be Dismissed for Lack of Jurisdiction ................................. 5

    A.    The Court Lacks Diversity Jurisdiction ............................................................. 5

    B.    The Court Lacks Federal-Question Jurisdiction ................................................. 6

    C.    The Court Lacks Supplemental Jurisdiction ...................................................... 8

II.    Areu Fails to State a Claim for Hostile Work Environment .................................... 8

    A.    Areu Was Not an Employee ............................................................................... 9

    B.    Areu Was Not a Covered "Non-Employee" ..................................................... 11

    C.    The Alleged Statements of Carlson, Hannity, Kurtz, and Caldwell Are Not Actionable ........................................................................................... 12

    D.    Fox News Cannot Be Held Liable for Henry's Alleged Statements ................. 17

III.   Areu Fails to State a Claim for Retaliation ............................................................ 18

    A.    Fox News Did Not Retaliate Against Areu for Refusing Sexual Advances ......................................................................................................... 19

        1.    Areu did not engage in "protected activity." ...................................... 19

        2.    Areu fails to allege any plausible "causal connection" to retaliation .............. 20

    B.    Fox News Did Not Unlawfully Retaliate After Areu Filed Suit ....................... 21

IV.   Areu Fails to State a Claim Against the Individual Defendants ............................. 25

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adams v. City of N.Y.*,
  837 F. Supp. 2d 108 (E.D.N.Y. 2011) ...................................................................................14

*Alvarado v. Nordstrom, Inc.*,
  685 F. App'x 4 (2d Cir. 2017) .............................................................................................14

*Anderson v. Davis Polk & Wardwell LLP*,
  850 F. Supp. 2d 392 (S.D.N.Y. 2012)..............................................................................14, 15

*Ardigo v. J. Christopher Capital, LLC*,
  2013 WL 1195117 (S.D.N.Y. Mar. 25, 2013) .......................................................................16

*Arroyo-Horne v. City of N.Y.*,
  2018 WL 4259866 (E.D.N.Y. Sept. 5, 2018) ........................................................................21

*Barnett Bank of Marion Cnty., N.A. v. Nelson*,
  517 U.S. 25 (1996).................................................................................................................23

*Bliss v. MXK Rest. Corp.*,
  220 F. Supp. 3d 419 (S.D.N.Y. 2016)...................................................................................25

*Brannon v. Delta Airlines, Inc.*,
  434 F. Supp. 3d 124 (S.D.N.Y. 2020)...................................................................................11

*Cmty. for Creative Non-Violence v. Reid*,
  490 U.S. 730 (1989)...............................................................................................................10

*Davis v. Phx. Ancient Art, S.A.*,
  2013 N.Y. Slip Op. 50613(U) (N.Y. Sup. Ct. Apr. 22, 2013) ...............................................13

*Del Castillo v. Pathmark Stores, Inc.*,
  941 F. Supp. 437 (S.D.N.Y. 1996).........................................................................................20

*Deveaux v. Skechers USA, Inc.*,
  2020 WL 1812741 (S.D.N.Y. Apr. 9, 2020)..........................................................................25

*Erasmus v. Deutsche Bank Ams. Holding Corp.*,
  2015 WL 7736554 (S.D.N.Y. Nov. 30, 2015).................................................................14, 17

*Gaughan v. Rubenstein*,
  261 F. Supp. 3d 390 (S.D.N.Y. 2017)...................................................................................23

*Gibb v. Tapestry, Inc.*,
  2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) .......................................................................7, 8

*Glaser v. Upright Citizens Brigade, LLC*,
  377 F. Supp. 3d 387 (S.D.N.Y. 2019)...................................................................................10

*Gonzalez v. City of N.Y.*,
  2015 WL 9450599 (E.D.N.Y. Dec. 22, 2015) ......................................................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hardy v. Lewis Gale Med. Ctr., LLC*,
377 F. Supp. 3d 596 (W.D. Va. 2019) ....................................................................7

*Hartley v. Rubio*,
785 F. Supp. 2d 165 (S.D.N.Y. 2011)....................................................................19

*Herrick Co. v. SCS Commc'ns, Inc.*,
251 F.3d 315 (2d Cir. 2001)....................................................................................6

*Hoatson v. N.Y. Archdiocese*,
280 F. App'x 88 (2d Cir. 2008) (per curiam) ........................................................23

*Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist.*,
2012 WL 3808902 (N.D. Ohio Aug. 8, 2012)........................................................23

*Hughes v. Twenty-First Century Fox, Inc.*,
304 F. Supp. 3d 429 (S.D.N.Y. 2018)..........................................................9, 10, 24

*Husser v. New York City Dep't of Educ.*,
137 F. Supp. 3d 253 (E.D.N.Y. 2015) ...................................................................14

*In re Murphy-Brown, LLC*,
907 F.3d 788 (4th Cir. 2018) .................................................................................24

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
120 A.D.3d 18 (N.Y. App. Div. 2014) ..................................................................14

*Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*,
2013 WL 1783550 (N.Y. Sup. Ct. Apr. 12, 2013)..................................................14

*Konikoff v. Prudential Ins. Co. of Am.*,
234 F.3d 92 (2d Cir. 2000)....................................................................................24

*Lashley v. New Life Bus. Inst., Inc.*,
2015 WL 1014128 (E.D.N.Y. Mar. 9, 2015)..........................................................19

*LaVigna v. WABC Television, Inc.*,
159 F.R.D. 432 (S.D.N.Y. 1995) ...........................................................................23

*Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*,
469 U.S. 256 (1985)...............................................................................................23

*Lekettey v. City of N.Y.*,
637 F. App'x 659 (2d Cir. 2016) ...........................................................................12

*Li v. Educ. Broad. Corp.*,
2011 N.Y. Slip Op. 31953(U), (N.Y. Sup. Ct. June 30, 2011) .........................14, 16

*Linardos v. Fortuna*,
157 F.3d 945 (2d Cir. 1998)....................................................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Littlejohn v. City of N.Y.*,
    795 F.3d 297 (2d Cir. 2015)...........................................................................19

*Martini v. Fed. Nat'l. Mortg. Ass'n*,
    178 F.3d 1336 (D.C. Cir. 1999)...................................................................7, 8

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
    715 F.3d 102 (2d Cir. 2013)......................................................................13, 16

*Nieblas-Love v. N.Y.C. Hous. Auth.*,
    165 F. Supp. 3d 51 (S.D.N.Y. 2016)..............................................................19

*Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
    2015 WL 4605684 (S.D.N.Y. July 31, 2015) ...........................................12, 15, 20

*O'Connor v. Davis*,
    126 F.3d 112 (2d Cir. 1997)....................................................................9, 10, 11

*Palazzo ex rel. Delmage v. Corio*,
    232 F.3d 38 (2d Cir. 2000)...............................................................................6

*Parsons v. JPMorgan Chase Bank, N.A.*,
    2018 WL 4861379 (E.D.N.Y. Sept. 30, 2018) .................................................21

*PBGC v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013)..............................................................................5

*Pereira v. 3072541 Can. Inc.*,
    2018 WL 5999636 (S.D.N.Y. Nov. 15, 2018) .................................................22

*Prince v. Cablevision Sys. Corp.*,
    2005 WL 1060373 (S.D.N.Y. May 6, 2005) ..............................................12, 15

*Radzanower v. Touche Ross & Co.*,
    426 U.S. 148 (1976)........................................................................................23

*Ray Legal Consulting Grp. v. Gray*,
    37 F. Supp. 3d 689 (S.D.N.Y. 2014).................................................................6

*Reid v. Ingerman Smith LLP*,
    876 F. Supp. 2d 176 (E.D.N.Y. 2012) ...........................................................20

*Richardson v. Bronx Lebanon Hosp.*,
    2014 WL 4386731 (S.D.N.Y. Sept. 5, 2014)..................................................21

*Russo v. N.Y. Presbyterian Hosp.*,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) ...........................................................13

*Sassaman v. Gamache*,
    566 F.3d 307 (2d Cir. 2009)...........................................................................25

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Scott-Robinson v. City of N.Y.*,
2016 WL 7378775 (S.D.N.Y. Dec. 15, 2016) ..................................................19, 21

*Simon v. City of N.Y.*,
2019 WL 916767 (S.D.N.Y. Feb. 14, 2019)....................................................13, 15

*Sletten v. LiquidHub, Inc.*,
2014 WL 3388866 (S.D.N.Y. July 11, 2014) ........................................................12

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
663 F.3d 556 (2d Cir. 2011)..................................................................................22

*Toos v. Leggiadro Int'l, Inc.*,
2016 N.Y. Slip Op. 32653(U) (N.Y. Sup. Ct. Jan. 5, 2016) ..................................13

*United States v. Amodeo*,
71 F.3d 1044 (2d Cir. 1995)..................................................................................24

*United States v. N.Y.C. Trans. Auth.*,
97 F.3d 672 (2d Cir. 1996)....................................................................................24

*United States v. Quattrone*,
402 F.3d 304 (2d Cir. 2005)..................................................................................24

*Villar v. City of N.Y.*,
135 F. Supp. 3d 105 (S.D.N.Y. 2015)...................................................................21

*Wang v. Phx. Satellite Television US, Inc.*,
976 F. Supp. 2d 527 (S.D.N.Y. 2013).....................................................................9

*Williams v. N.Y.C. Dep't of Educ.*,
2019 WL 4393546 (S.D.N.Y. Aug. 28, 2019).......................................................19

*Wimmer v. Suffolk Cnty. Police Dep't*,
176 F.3d 125 (2d Cir. 1999)....................................................................................9

*Xiang v. Eagle Enters., LLC*,
2020 WL 248941 (S.D.N.Y. Jan. 16, 2020) ..........................................................25

*York v. Ass'n of Bar of City of N.Y.*,
286 F.3d 122 (2d Cir. 2002)...............................................................................9, 10

*Zakrzewska v. New Sch.*,
14 N.Y.3d 469 (2010) ...........................................................................................17

**STATUTES**

28 U.S.C. § 1331.......................................................................................................6

28 U.S.C. § 1332.......................................................................................................5

28 U.S.C. § 1367.......................................................................................................8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

42 U.S.C. § 2000e-5 .................................................................................................7

N.Y. Exec. Law § 296-d ........................................................................................11

**OTHER AUTHORITIES**

Fed. R. Civ. P. 11 ............................................................................................. *passim*

Fed. R. Civ. P. 12 ............................................................................................5, 15

N.Y.C. Admin. Code § 8-107, L.L. 172/2019 ..............................................11, 17, 22

## PRELIMINARY STATEMENT

Plaintiff Cathy Areu's claims do not belong in federal court. Because her claims arise almost entirely under state law, she relies primarily on an assertion of diversity jurisdiction. There is no complete diversity, however, because both she and Defendant Tucker Carlson are Florida residents. That leaves Title VII as her only hook, but her Title VII claims are barred as premature. Under Title VII, a plaintiff cannot file suit until 180 days after filing charges with the EEOC, or if the EEOC has investigated and dismissed the charges. Neither condition is met here. Areu thus has no basis for federal jurisdiction, and her claims should be dismissed at the threshold.

If the court reaches the merits, Areu's claims fail as a matter of law. Her primary theory of "hostile work environment" cannot get off the ground because she was not an employee of Fox News, and thus she had no "work environment." Even if she could assert a hostile-work-environment claim, moreover, most of the "hostile" statements she alleges are not actionable because they do not rise to the level of unlawful harassing conduct. To the extent she does identify potentially actionable speech in the form of sexually explicit messages sent to her by Ed Henry, Fox News cannot be held liable because that misconduct did not occur in the workplace, and the company had no knowledge or reason to know about it.

Areu's alternative "retaliation" theories also fail. Her primary theory is that Fox News supposedly retaliated by failing to hire her because she refused purported "sexual advances." That theory fails, however, because she does not allege any facts showing that the company even *knew about* any purported "advances"—which are entirely fabricated, as explained in the Rule 11 motion—much less that the company failed to hire her *because* she supposedly rejected them.

Finally, Fox News cannot be held liable for "retaliating" by pursuing Rule 11 sanctions against Areu or by publicly defending itself against her allegations by releasing her own e-mails that rebut her claims. Fox News has a right to defend itself, and cannot be punished for doing so.

1

# BACKGROUND

## A.      Areu's Original Complaint

Plaintiff Cathy Areu appeared as an unpaid guest on various Fox News shows. According to her operative complaint, "she was never compensated for her appearances." Dkt. 2 ¶ 51. She never submitted an application for employment or any other paid position with the company, but she states that she "repeatedly expressed her interest in securing one of the valued paid contributor positions at Fox News." *Id*. ¶ 48. Despite her expressions of interest, however, she "was not hired as a paid contributor." *Id*. ¶ 69.

By the summer of 2020, Areu alleges that her invitations to appear on Fox News had dwindled, and that several "opinion pieces" she submitted to FoxNews.com were rejected by the "opinion editors" of the website. *Id*. ¶¶ 176–77. Then, in July, she heard the news that the company had terminated one of its anchors, Ed Henry, who was accused of sexual misconduct by another employee, Jennifer Eckhart. *Id*. ¶ 185. That prompted Areu to write an e-mail to the company stating that "she had pornographic text messages from Mr. Henry," and that Henry "was 'not the only one' who sent her pornographic messages." *Id*. ¶ 186.

On July 20, Areu sued Fox News claiming that Henry had sexually harassed her. *See* Case No. 1:20-cv-5593, Dkt. 1. Her complaint detailed several explicit messages that Henry allegedly sent to her, although it did not allege that the company had been aware of those messages. *Id*. ¶¶ 19–21. The complaint also did not allege that Areu received such messages from anyone else. Instead, it made a series of new and unrelated allegations against four of Fox News's other on-air personalities—Tucker Carlson, Sean Hannity, Howard Kurtz, and Gianno Caldwell. In particular, she alleged that each of these four made what she characterized as improper sexual comments or advances, and that the reason Fox News did not hire her as a paid contributor is that she rebuffed their advances or otherwise refused to "play along." *Id*. ¶¶ 24–38.

2

In response, Fox News served Areu and her counsel with a Rule 11 letter identifying a number of false and frivolous allegations in her complaint, and putting her on notice that the company would seek sanctions if she did not withdraw or appropriately correct them. Case No. No. 1:20-cv-5593, Dkt. 53, at 7. Areu's original counsel then withdrew from representing her, and she retained new counsel.

Through her new counsel, Areu filed an amended complaint that removed several of the more glaring factual inaccuracies from her original complaint. Case No. 1:20-cv-5593, Dkt. 38. But because she did not withdraw or appropriately correct the core Rule 11 violations, Fox News filed a motion for Rule 11 sanctions. That motion is now pending before this Court. Case No. 1:20-cv-5593, Dkt. 52–53. Areu subsequently filed a second amended complaint. Dkt. 2.

### B.     The Claims in the Operative Complaint

In the operative complaint, Areu asserts three basic theories of relief under the overlapping provisions of Title VII, the New York State Human Rights Law (NYSHRL), and the New York City Human Rights Law (NYCHRL). First, she contends that she was both an "employee" and a covered "non-employee" of Fox News, and that during the course of her work she was subjected to unlawful "hostile work environment" on the basis of her gender. Dkt. 2 ¶¶ 16 & n.1, 191, 203, 219. This theory is based on the sexually explicit messages allegedly sent to her by Henry, as well as a scattering of unrelated comments allegedly made by Carlson, Hannity, Kurtz, and Caldwell.

As to Carlson, Areu alleges that he told her after his show one night that he would be "staying alone in his hotel room." *Id*. ¶ 150. She interpreted that as a sexual advance and changed the subject. *Id*. ¶¶ 151–52. As to Hannity, Areu alleges an incident in which she brought a male friend with her to the studio, where Hannity insisted that the friend take her "out on a date," and then gave them money to have drinks together. *Id*. ¶¶ 98–102. She alleges that the incident made her "mortified" and "uncomfortable." *Id*. ¶ 100. As to Kurtz, Areu alleges that when she requested

to meet with him to discuss her career, he asked her to meet him in the lobby of his hotel, where he was working. *Id.* ¶¶ 115–16. She claims that she interpreted that as a sexual "advance[]," which she "rejected." *Id.* ¶ 119.  The next day, she alleges that Kurtz told her, "I have to remember that you're the only woman here who tells me she's at a hotel to simply tell me she's there. You don't invite me over or come to my hotel room… I've made a mental note." *Id.* ¶ 120. As to Caldwell, Areu alleges that after she texted him a request to introduce her to a high-profile political pundit over lunch, he responded, "Take me to lunch." *Id.* ¶ 137. She interpreted that statement as an "attempt to coerce [her] into dating [Caldwell]" in exchange for an introduction. *Id.* ¶ 131.

Second, based on these comments, Areu also asserts claims of "retaliation" and "failure to hire." Specifically, she alleges that the reason Fox News failed to hire her as a paid contributor is that she refused to "succumb" to the supposed sexual "propositions" described above, and that she otherwise refused to "play along." *Id.* ¶¶ 73–75. She claims that the company's failure to hire her was thus discriminatory, and that it was done in retaliation for her rebuffing sexual advances. *Id.* ¶¶ 192, 198, 204, 209, 219, 224. She does not allege the identity of any of the relevant decision-makers at Fox News who would have had responsibility for deciding whether to hire her as a paid contributor.

Third, Areu also asserts a claim of retaliation based on two aspects of Fox News's conduct after she filed suit. She alleges that the company's "threatened motion for sanctions" against her under Rule 11 was a form of unlawful retaliation. *Id.* ¶¶ 198, 209, 224. And she claims that it was unlawful for the company to publicly defend itself against her allegations by releasing to the media accurate copies of her own e-mails that cast doubt on her allegations. *Id.*

Finally, Areu asserts derivative claims against Carlson, Hannity, and Kurtz accusing them of "aid[ing] and abett[ing]" the alleged violations described above. *Id.* ¶ 230.

## STANDARD OF REVIEW

On a motion to dismiss under Rule 12(b)(6), the court must assume the truth of Areu's factual allegations but not her legal conclusions. To state a valid claim, she cannot rely on mere conclusory assertions, but instead must allege "concrete" facts that make her claims "plausible." *See PBGC v. Morgan Stanley Inv. Mgmt. Inc*., 712 F.3d 705, 719 (2d Cir. 2013).

## ARGUMENT

## I.      Areu's Claims Should Be Dismissed for Lack of Jurisdiction

Areu's claims do not belong in federal court. She claims that the Court has diversity jurisdiction (Dkt. 2 ¶ 11), but there is no complete diversity because both she and Defendant Tucker Carlson are Florida residents. In the alternative, she alleges that the Court has federal-question jurisdiction over her Title VII claims (and thus supplemental jurisdiction over her state-law claims). *Id.* ¶ 14. But her Title VII claims are barred because she filed them prematurely without a valid right-to-sue letter. Accordingly, since both of her asserted grounds for jurisdiction fail, Areu's claims should be dismissed at the threshold.

### A.      The Court Lacks Diversity Jurisdiction

This Court has jurisdiction in civil actions "between … citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). In an attempt to create diversity jurisdiction, Areu changed the state where she claims to be a citizen when she filed her amended complaint. In her original complaint, filed in July 2020, Areu alleged that she is a "resident of the State of New York" like many of the Defendants. Case No. 1:20-cv-5593, Dkt. 1 ¶ 46. But in her amended complaint, she now alleges that she became a "resident of Florida" in "January 2019." Dkt. 2 ¶¶ 11, 51. Even taking this self-contradictory allegation at face value, Areu's newfound Florida residency does not help her because Defendant Tucker Carlson is also a Florida resident.

For purposes of diversity jurisdiction, an individual party's "citizenship" is his domicile—"the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998)).

Here, Carlson owns a house in Florida, pays taxes in Florida, holds a Florida driver's license, and is registered to vote in Florida—and when he leaves Florida, he always intends to return. Declaration of Tucker Carlson  ¶¶ 2–10; *see also Ray Legal Consulting Grp. v. Gray*, 37 F. Supp. 3d 689, 696 (S.D.N.Y. 2014) ("[W]here subject matter jurisdiction is contested[,] a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits."). Florida is thus the location of Carlson's true fixed home and his legal domicile. The amended complaint does not allege any facts (as opposed to legal conclusions) to the contrary. Accordingly, because "diversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships," *Herrick Co. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001), the common Florida residency of Carlson and Areu forecloses diversity jurisdiction.

## B.    The Court Lacks Federal-Question Jurisdiction

This Court also has jurisdiction over civil actions "arising under" federal law. 28 U.S.C. § 1331. Areu contends that her Title VII claims provide jurisdiction, thus creating supplemental jurisdiction over her state-law claims. Dkt. 2 ¶ 14. But because she filed her Title VII claims prematurely, they are barred and cannot provide her any foothold in federal court.

Under Title VII, a private plaintiff may not file suit in court unless she first files a charge with the EEOC to give the agency a chance to investigate and decide whether to bring its own enforcement proceeding. Accordingly, a "civil action may be brought" by the plaintiff only if the agency has "dismissed" the charge or has not filed a civil action "within one hundred and eighty

days." 42 U.S.C. § 2000e-5(f)(1). The statute does not allow the agency to dismiss a charge without investigating. To the contrary, the agency has a mandatory duty to investigate first: After a charge is filed, the agency "*shall* make an investigation thereof." *Id*. ¶ 2000e-5(b) (emphasis added). And only then, "[i]f the Commission determines *after such investigation* that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge." *Id*. (emphasis added). The statutory scheme thus gives effect to Congress's intention that the EEOC should have primary responsibility for investigating and prosecuting alleged violations of Title VII, and that "recourse to the private lawsuit will be the exception and not the rule." *Martini v. Fed. Nat'l. Mortg. Ass'n*, 178 F.3d 1336, 1346 (D.C. Cir. 1999).

Despite the clear statutory text, the EEOC has purported to "authorize[] itself" to issue early right-to-sue letters *before* the agency has conducted any investigation and *before* the 180-day period expires. *Gibb v. Tapestry, Inc*., 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018). But the "plain language" of Title VII bars this practice. *Id*. at *6. "The EEOC cannot, by its own hand, abrogate its congressional mandate." *Id.* Accordingly, if the 180-day period has not expired and the EEOC has not conducted any investigation, then the issuance of "an early right-to-sue letter presents 'a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC.'" *Id.* at *5 (citation omitted); *see also Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 607–11 (W.D. Va. 2019) (surveying cases and holding that "the EEOC's regulation is invalid and the Title VII claims of those Plaintiffs who received right-to-sue letters from the EEOC in fewer than 180 days must be remanded to the EEOC").

Here, the EEOC did not issue a valid right-to-sue letter because the 180-day period has not yet run and the agency did not conduct any investigation of Areu's charges. By Areu's own account, she did not decide to pursue her claims until around July 2020. Dkt. 2 ¶ 185. Thus, even

7

assuming she immediately filed her EEOC charges in July or August, the 180-day period would not expire until January or February 2021. Although the EEOC issued an early right-to-sue letter on September 9, that letter is invalid because the agency did not bother to conduct any investigation as required by law. According to the letter, the EEOC did not investigate at all but simply "determined that it is unlikely that [it] will be able to complete its administrative processing within 180 days." Case No. 1:20-cv-5593, Dkt. 42, at 2. That shortcut is unlawful. *See Tapestry*, 2018 WL 6329403 at *6, and *Martini*, 178 F.3d at 1346. Areu's Title VII claims are thus premature.

### C. The Court Lacks Supplemental Jurisdiction

Because Areu has no valid basis to invoke this Court's original jurisdiction for *any* of her claims, the Court also lacks supplemental jurisdiction over her claims under the NYSHRL and NYCHRL. Indeed, district courts may exercise supplemental jurisdiction over non-federal claims only in "civil action[s] of which the district courts have original jurisdiction." 28 U.S.C. § 1367(a). And because there is no original jurisdiction here, that should be the end of the case.

## II. Areu Fails to State a Claim for Hostile Work Environment

On the merits, Areu's claims fare no better. Her complaint sounds primarily in a theory of "hostile work environment" discrimination, but that theory fails as a matter of law for four reasons. First, she cannot bring a hostile-work-environment claim under Title VII because she was not an employee of Fox News. Second, although the NYSHRL and the NYCHRL have been amended to allow some types of non-employees to bring hostile-work-environment claims, those amendments were enacted too late to cover most of the claims here, and Areu was not a covered type of non-employee in any event. Third, even if Areu could assert a hostile-work-environment claim, the alleged statements of Carlson, Hannity, Kurtz, and Caldwell are not actionable. And fourth, even if Henry's alleged statements are actionable, Fox News cannot be held liable for them because the company had no reason to know about them, much less any actual knowledge.

### A.    Areu Was Not an Employee

Because Areu was not an employee of Fox News but only an unpaid television guest, she did not have any "work environment" and thus cannot assert a hostile-work-environment claim. "It is inherent in the definition of a [] hostile work environment . . . that the person against whom the hostility is directed must be in an employment relationship with the employer." *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 136 (2d Cir. 1999).  After all, an employer "logically cannot discriminate against a person in the 'conditions or privileges of employment' if no employment relationship exists." *Wang v. Phx. Satellite Television US, Inc.*, 976 F. Supp. 2d 527, 532 (S.D.N.Y. 2013). Thus, under Title VII, the NYSHRL, and the NYCHRL, a plaintiff typically "must be an employee . . . to assert an actionable hostile work environment claim." *Id.* at 537.  *See also York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 126 (2d Cir. 2002) (upholding dismissal of sexual harassment claim because plaintiff was not "an employee of the [defendant] for Title VII purposes"); *O'Connor v. Davis*, 126 F.3d 112, 116 (2d Cir. 1997) (holding plaintiff "was not a[n] [] employee within the meaning of Title VII and thus [] her [hostile environment] claim under that statute must fail"); *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 442–45 (S.D.N.Y. 2018) (plaintiff's "status as a non-employee [wa]s fatal" to harassment claims under Title VII, the NYSHRL and the NYCHRL).

Determining employment status requires a "two-step process." *Wang*, 976 F. Supp. 2d at 535–36. First, a plaintiff "must establish that she received remuneration in some form for her work." *Id.* at 535. "Where no financial benefit is obtained by the purported employee from the employer, no 'plausible' employment relationship of any sort can be said to exist." *York*, 286 F.3d at 126; *O'Connor*, 126 F.3d at 115–16. "[R]emuneration" means either financial compensation or "substantial benefits not merely incidental to the activity performed." *See, e.g.*, *York*, 286 F.3d at 126. Courts routinely dismiss cases involving individuals who put forth only incidental, non-

financial benefits as the basis for remuneration. *See, e.g.*, *id.* ("[c]lerical support, limited tax deductions, and 'networking opportunities'" not enough to "meet the remuneration test"); *Glaser v. Upright Citizens Brigade, LLC*, 377 F. Supp. 3d 387, 395–96 (S.D.N.Y. 2019) ("free drinks, [] free admission tickets . . ., and [] the opportunity to showcase his work to casting directors" not enough); *Hughes*, 304 F. Supp. 3d at 443 (travel to and from Fox's headquarters and the cost of hair and make-up for television appearances "fall short of the 'minimum level of significance or substantiality'"). Second, if the plaintiff received remuneration, courts apply 13 factors to discern whether the employer had the "right to control the manner and means" of the plaintiff's work. *Hughes*, 304 F. Supp. 3d at 442 (citing *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751 (1989)).

Here, Areu was not an employee. She was an unpaid guest who was invited on television to talk about current events. As to the first step, remuneration, she admits that "she was never provided any compensation." Dkt. 2 ¶ 181. Instead, she makes only the conclusory assertion that "she received ['substantial benefits'] from appearing on Fox News." *Id.* ¶ 16 n.1. But she does not allege any actual facts to back that assertion, nor could she in light of *Hughes*, 304 F. Supp. 3d at 443. Thus, because she received no remuneration, she was not an employee for that reason alone.

Second, even if Areu had been paid, her claim to "employee" status would fail because she does not allege any facts showing that Fox News had the "right to control the manner and means" of her work. *O'Connor*, 126 F.3d at 115. Again, she makes the conclusory assertion that Fox News had "substantial control . . . over her working conditions." Dkt. 2 ¶ 16 n.1. But she provides no factual basis for that assertion. The closest she comes is her claim that Fox News "expected" her to appear when invited, and "required [her] to stay up to date on all current events" if she wanted to be invited. *Id.* ¶ 50. But that does not equate to any "right to control" Areu, much less a right to

control the "manner and means" of her work. *O'Connor*, 126 F.3d at 115. Areu also does not—and cannot—establish any of the *Reid* factors, such as a method of payment, her receipt of employee benefits, her tax treatment as an employee, or her lack of discretion over when and how long to work. Accordingly, Areu would not have been an employee even if she had been paid.

**B.      Areu Was Not a Covered "Non-Employee"**

Perhaps realizing that she was not an employee, Areu asserts that she was a covered "non-employee" under the NYSHRL and NYCHRL. Dkt. 2 ¶¶ 16–17. At the outset, it is significant that her covered "non-employee" allegations do not apply to (and thus cannot save) her Title VII hostile-environment claims. As a result, if the Court determines that Areu's Title VII claims fail because she was not an "employee" (and that her Title VII retaliation claim fails) then it may simply decline to exercise supplemental jurisdiction over her state- and city-law claims. *See, e.g.*, *Brannon v. Delta Airlines, Inc*., 434 F. Supp. 3d 124, 141 (S.D.N.Y. 2020) (Abrams, J.)

In any event, Areu's allegations of covered "non-employee" status under the NYSHRL and NYCHRL also fail. To begin, the NYCHRL did not apply to non-employees until an amendment that became effective in January 2020—well after many of the violations that Areu alleges. *See* N.Y.C. Admin. Code § 8-107(23), L.L. 172/2019 § 2. Even as amended, the NYCHRL covers only non-employees who qualify as "interns, freelancers [or] independent contractors," N.Y.C. Admin Code § 8-107(23), which Areu was not. Likewise, the NYSHRL applies only to certain non-employees who "provid[e] services pursuant to a contract in the workplace." N.Y. Exec. Law § 296-d (emphasis added). And Areu admits that she never had a contract with Fox News. Dkt. 2 ¶¶ 58, 110–11. As to both the NYCHRL and the NYSHRL, therefore, Areu alleges no facts to establish that she was a covered "non-employee." Because Areu was neither an "employee" nor a covered "non-employee," her hostile-work-environment claims fail.

**C.      The Alleged Statements of Carlson, Hannity, Kurtz, and Caldwell Are Not Actionable**

Even if Areu could assert a hostile-environment claim, the alleged statements of Carlson, Hannity, Kurtz, and Caldwell are not actionable. They fall well short of the severe-or-pervasive standard under Title VII and the NYSHRL. And they also do not meet the more flexible NYCHRL standard, which still requires more than mere insensitive comments.

**1.**      To prevail on a hostile-environment claim under Title VII, a plaintiff must show that (1) "the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment" and (2) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Lekettey v. City of N.Y.*, 637 F. App'x 659, 661 (2d Cir. 2016). Under the NYSHRL as it existed until October 11, 2019 (when it was amended to track the NYCHRL's standard below), hostile-work-environment claims are analyzed pursuant to the same severe-or-pervasive standard. *See Sletten v. LiquidHub, Inc.*, 2014 WL 3388866, at *6 (S.D.N.Y. July 11, 2014).

This is a high bar, and courts routinely dismiss Title VII and NYSHRL hostile-work-environment claims due to a lack of severity or pervasiveness. *See, e.g., Nunez v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2015 WL 4605684, at *11 (S.D.N.Y. July 31, 2015) (multiple date requests and work-related threat, though "inappropriate" and "undoubtedly irritating and discomfiting" were not "severe or pervasive"); *Prince v. Cablevision Sys. Corp.*, 2005 WL 1060373, at *6–11 (S.D.N.Y. May 6, 2005) (dismissing Title VII and NYSHRL claims where a deputy director made sexual advances toward plaintiff, solicited plaintiff for sex, told her that he wanted to have sex with other women on the team, tried to kiss plaintiff and put his tongue down her throat, and told plaintiff that he wanted to go into the bathroom and have sex with her)

(collecting cases)); *Davis v. Phx. Ancient Art, S.A.*, 2013 N.Y. Slip Op. 50613(U), ¶ 6 (N.Y. Sup. Ct. Apr. 22, 2013) (forcible kissing, asking plaintiff to sleep with him, and engaging in sexual comments made by clients to plaintiff was insufficient under to state a claim under the NYSHRL); *Toos v. Leggiadro Int'l, Inc.*, 2016 N.Y. Slip Op. 32653(U), ¶ 4 (N.Y. Sup. Ct. Jan. 5, 2016) (multiple suggestive comments, including saying that it was too bad she did not have a man to share her hotel room with and calling plaintiff "lover boy" and "cutie pie," and asking him to shop for underwear with her, were not "severe and pervasive").

Although the NYCHRL allows hostile-work-environment claims in the absence of "severe and pervasive" misconduct, the Second Circuit and New York courts have consistently recognized that the NYCHRL is not a "general civility code" for the workplace. *See, e.g.*, the *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 113 (2d Cir. 2013). Accordingly, "[i]solated incidents of unwelcome verbal and physical conduct have been found to constitute the type of 'petty slights & trivial inconveniences' that are not actionable even under the more liberal NYCHRL standard." *Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 450 (E.D.N.Y. 2013). And the plaintiff "still bears the burden of showing that the conduct is caused by a discriminatory motive." *Mihalik*, 715 F.3d at 110.

Multiple courts have rejected hostile-environment claims under the NYCHRL based on speech that does not rise to the level of actionable discriminatory harassment. *See e.g.*, *Simon v. City of N.Y.*, 2019 WL 916767, at *10 (S.D.N.Y. Feb. 14, 2019) (plaintiff failed to state NYCHRL claim where male supervisor invaded her personal space, told her that "[she] liked him," and asked her when she was leaving work, as such "stray remarks had [no] discriminatory motive at all," were not hostile, and did not "signal views about the role of women in the workplace"); *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 404 (S.D.N.Y. 2012) (supervisor

"position[ing] herself i[n] such a way that her vagina [wa]s practically sitting on [plaintiff's] left shoulder," while not "perfect manners in a workplace setting . . . plainly does not violate even the lower threshold of the NYCHRL, which is not intended to 'operate as a "general civility code."'"); *Li v. Educ. Broad. Corp.*, 2011 N.Y. Slip Op. 31953(U), at *9 (N.Y. Sup. Ct. June 30, 2011) (isolated touching and harassing comments perceived as discriminatory were "too petty and trivial" to be actionable under NYCHRL). *See also Erasmus v. Deutsche Bank Americas Holding Corp.*, 2015 WL 7736554, at *6 (S.D.N.Y. Nov. 30, 2015) (expressing "substantial doubts" whether allegations of "leer[ing]," simulated genitalia-holding, & "inappropriate sexual comments" could give rise to harassment claim under NYCHRL); *Kim v. Goldberg, Weprin, Finkel, Goldstein, LLP*, 120 A.D.3d 18, 23 (N.Y. App. Div. 2014) (inappropriate comments, including that "women who breast fed were cows," were no more than "petty slights and trivial inconveniences" (2013 WL 1783550, at *1 (N.Y. Sup. Ct. Apr. 12, 2013)); *Adams v. City of New York*, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011) (granting summary judgment on NYSHRL and NYCHRL claims where supervisor allegedly answered office door with shirt off and pants unzipped); *Husser v. New York City Dep't of Educ.*, 137 F. Supp. 3d 253, 276–77 (E.D.N.Y. 2015) (granting summary judgment on NYCHRL hostile-environment claim where supervisor repeatedly used the word "c*nt," changed clothes in plaintiff's presence, zoomed in on photo of his crotch, and mouthed "blow me"); *Alvarado v. Nordstrom, Inc.*, 685 F. App'x 4 (2d Cir. 2017) (granting summary judgment on NYCHRL claims, holding that three offensive comments, including telling plaintiff that he was acting like a "little b*tch," were "merely petty even if [] hurtful").

14

2.      As explained in Defendants' Rule 11 motion, the statements that Areu alleges as the basis of her claims are largely fabricated. But even taking her allegations as true for purposes of Rule 12(b)(6), the alleged statements are not unlawful. They are not actionable even under the NYCHRL, much less under the severe-or-pervasive standard of Title VII and the NYSHRL.

As to Carlson, Areu alleges that he "began telling [her] that he would be alone in New York City [one] night, and that he would be staying alone in his hotel room." Dkt. 2 ¶ 150. She infers that these comments implicitly "suggest[ed] . . . a sexual encounter." *Id.* ¶ 151. But because other cases have held that even multiple *explicit* date requests and a literal proposition for sex do not constitute unlawful severe or pervasive harassment (see *Nunez* and *Prince*), Areu's speculation here is insufficient. Similarly, the alleged comments here are far less offensive than conduct that courts have found non-actionable under the NYCHRL in other cases, including an actual romantic comment such as "I like you" (*see Simon*, 2019 U.S. Dist. LEXIS 25331, at *25–26), or even suggestively placing one's genitalia close to the plaintiff (see *Anderson*, 850 F. Supp. 2d at 404).

As to Hannity, Areu alleges that when she brought a male friend on set, Hannity asked him "whether he intended to take Ms. Areu on a date to Del Frisco's after the show." Dkt. 2 ¶ 98. According to Areu, Hannity "stated that the guest has to take this 'beautiful woman' out on a date and kept asking the guest whether he would agree to do so." *Id.* Areu alleges that Hannity then "began loudly calling out to other males in the room," who "began laughing and saying they would take Ms. Areu on a date." *Id.* ¶ 99. She also alleges that Hannity "began throwing out $20 bills on the table in front of [her guest]" and asked "[i]f all these men are willing to take her out on a date, why won't you?" *Id.* ¶ 100. From all this—at worst amounting to Hannity allegedly insisting that Areu's friend, who she brought with her on set, take her out for drinks after the show—Areu infers that Hannity unlawfully harassed her. But Hannity's alleged statements were no more than "mildly

offensive" comments, which are not unlawful even under the NYCHRL standard. *Ardigo v. J. Christopher, LLC*, 2013 WL 1195117, at *4–5, *11–12 (S.D.N.Y. Mar. 25, 2013). This type of "petty and trivial" comment is not the stuff of a lawsuit. *Li*, 2011 N.Y. Slip Op. 31953(U), at *9.

Regarding Kurtz, Areu claims that she asked "to meet with him to discuss work-related items and her desire for a paid position at Fox News." Dkt. 2 ¶ 114. In response, Kurtz told Areu that he was at his hotel "making calls. Can you come to the Muse lobby at 7:15?" *Id.* ¶ 116. Areu "declined" and then, while at dinner, "[s]he decided to wait until as late possible [sic]" to "text[] Mr. Kurtz that she was available to meet him at his hotel." *Id.* ¶¶ 116–18. Kurtz "did not respond." *Id.* ¶ 118. He also declined to meet her the next morning, stating, "I'm booked solid this morning which is why I hoped to connect last night." *Id.* ¶ 119. Later, he allegedly told her, "in sum and substance," "I have to remember that you're the only woman here who tells me she's at a hotel to simply tell me she's there. You don't invite me over or come to my hotel room[.] I've made a mental note." *Id.* ¶ 120. Again, none of this is actionable harassment. The alleged comments contained no explicit sexual content at all. And even if they could be deemed *implicitly* sexual in nature, such one-off romantic overtures would not be actionable because at worst they could be described as "mildly offensive." *Ardigo*, 2013 WL 1195117, at *4–5, *11–12.

Finally, regarding Caldwell (who is not even alleged to be a Fox News employee), Areu alleges that he responded to her suggestion of having lunch with her and a colleague by texting her, "Take me to lunch." Dkt. 2 ¶ 137. Based solely on this innocuous message, she claims that Caldwell "attempt[ed] to coerce [her] into dating him." *Id.* ¶ 131. The facts alleged do not remotely support that characterization. Nor is it reasonable to infer any "discriminatory motive" from Caldwell's text. *Mihalik*, 715 F.3d at 110. The text was not even an "insensitive comment[]," which is the minimum required to be actionable under the NYCHRL. *Ardigo*, 2013 WL 1195117, at *4.

### D.      Fox News Cannot Be Held Liable for Henry's Alleged Statements

Areu alleges that Henry sent her a "slew of wildly inappropriate sexual images, messages and videos through the first half of 2020, including many texts in which he implied that Ms. Areu should have sex with him and that he would assist Ms. Areu's career if she did so." Dkt. 2 ¶ 168. But Areu does not allege that these messages occurred in the workplace. And even if they were actionable, Fox News cannot be held liable because it had no reason to know about them and could not reasonably have prevented them.

Although Henry was a Fox News employee, under the NYCHRL an employer cannot be liable for an employee's harassing conduct except in three limited circumstances: (1) "where the offending employee 'exercised managerial or supervisory responsibility'" over the victim; (2) "where the employer knew of the offending employee's unlawful discriminatory conduct and acquiesced in it or failed to take 'immediate and appropriate corrective action'"; and (3) "where the employer 'should have known' of the offending employee's unlawful discriminatory conduct yet 'failed to exercise reasonable diligence to prevent [it].'" *Zakrzewska v. New Sch.*, 14 N.Y.3d 469, 479 (2010), quoting N.Y.C. Admin. Code § 8-107(13).  *See also Erasmus v. Deutsche Bank Ams. Holding Corp.*, 2015 WL 7736554, at *8 (S.D.N.Y. Nov. 30, 2015) (recognizing that the grounds for imputation are even narrower under Title VII and the NYSHRL).

Here, Areu does not allege facts to satisfy any of these three prongs. *First*, she does not claim that Henry exercised managerial or supervisory responsibility over her. In fact, she does not even allege that she worked with Henry. She alleges only that she spoke with him after a show, Dkt. 2 ¶ 168, and that she pitched him story ideas, *id.* ¶ 175. That is not enough. *Second*, Areu does not allege that Fox News knew of Henry's statements and failed to take corrective action. Indeed, by her own account, she did not tell any Fox News employee about Henry's offensive messages until *after* Henry was fired in July 2020. *Id.* ¶¶ 179, 185–86. *Third*, for many of the same reasons,

Areu does not allege any facts to show that Fox News should have known about Henry's harassment and failed reasonably to prevent it. She did not tell Fox News about his alleged actions until after he was fired. *Id.* And the only other specific misconduct that he allegedly committed beforehand was a non-workplace affair (*id.* ¶ 23), and his alleged abuse of Eckhart, which Fox News did not know about. Although the complaint vaguely asserts that "multiple" unidentified "women" complained about misconduct by Henry at some unspecified point (*id.* ¶ 26), it does not allege any concrete facts to support that allegation. Much less does it explain how such complaints could have put Fox News on notice about Henry's messages *to Areu*. There is thus no factual basis to infer that Fox News can be liable for Henry's harassment of Areu.

## III.    Areu Fails to State a Claim for Retaliation

Areu's retaliation claims fare no better. She asserts two basic theories. First, she claims that Fox News retaliated against her by failing to hire her as a paid contributor because she refused the purported "sexual advances" of the individual defendants. And second, she claims that after she filed suit, Fox News "retaliated" against her by pursuing Rule 11 sanctions and publicly releasing her e-mails that contradicted the allegations in her complaint. But even assuming the false allegations in the complaint to be true, both of Areu's theories fail as a matter of law.

As to the first theory, merely rejecting purported sexual advances does not constitute "protected activity" for purposes of a retaliation claim. And even if it did, Areu does not allege any facts to plausibly show that the company retaliated by failing to hire her *because* she rejected sexual advances. Indeed, she does not even allege any facts showing that any of the relevant decision-makers at the company even *knew about* the purported sexual advances or her alleged rejection of them—much less that they failed to hire her *because of* those alleged facts.

As to the second theory, pursuing sanctions and publishing facts to defend against a highly publicized lawsuit do not constitute unlawful retaliation. Because the Federal Rules affirmatively

authorize the pursuit of sanctions for good cause, state law cannot penalize a party for doing so in good faith. Likewise, anti-retaliation laws do not prohibit publishing true facts to rebut claims of wrongdoing, nor would the First Amendment allow such a speech prohibition.

### A. Fox News Did Not Retaliate Against Areu for Refusing Sexual Advances

To establish a claim for retaliation, a plaintiff must show that she engaged in protected activity to oppose discrimination and suffered adverse action as a result. *Hartley v. Rubio*, 785 F. Supp. 2d 165, 181 (S.D.N.Y. 2011). To be "protected," the plaintiff's activity must involve some affirmative act "taken to protest or oppose statutorily prohibited discrimination." *Nieblas-Love v. N.Y.C. Hous. Auth.*, 165 F. Supp. 3d 51, 71 (S.D.N.Y. 2016); *see also Scott-Robinson v. City of New York*, 2016 WL 7378775, at *3 (S.D.N.Y. Dec. 15, 2016) (same standard under NYCHRL). And at the very least, the plaintiff must show that the employer "knew of the protected activity" and that there was "a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 315–16 (2d Cir. 2015).

### 1. Areu did not engage in "protected activity."

Areu's primary theory appears to be that Fox News retaliated against her by failing to hire her because she rejected the individual defendants' purported sexual advances. *See, e.g.*, Dkt. 2 ¶ 180 ("Ms. Areu's career" was "derailed as a result of her refusal to engage in sexual activity with male anchors[.]"). This claim fails at the threshold, however, because she alleges no facts establishing that she engaged in "protected activity" that led to retaliation.

As discussed above, "'protected activity' means action taken to protest or *oppose* statutorily prohibited discrimination." *Nieblas-Love*, 165 F. Supp. 3d at 70 (emphasis added). Merely rejecting sexual advances is not enough. *See, e.g.*, *Williams v. N.Y.C. Dep't of Educ.*, 2019 WL 4393546, at *12 (S.D.N.Y. Aug. 28, 2019) ("resisting a supervisor's sexual advance, without more, is not enough to state a claim for a retaliation"); *Lashley v. New Life Bus. Inst., Inc.*, 2015

WL 1014128, at *8 (E.D.N.Y. Mar. 9, 2015) (same); *Nunez*, 2015 WL 4605684, at *13 n.4 (same); *Gonzalez v. City of N.Y.*, 2015 WL 9450599, at *5 (E.D.N.Y. Dec. 22, 2015) (same); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 189 (E.D.N.Y. 2012) (same); *Del Castillo v. Pathmark Stores, Inc.*, 941 F. Supp. 437, 438–39 (S.D.N.Y. 1996) ("[E]ven the broadest interpretation of a retaliation claim cannot encompass instances where the alleged 'protected activity' consists simply of declining a harasser's sexual advances.").

Here, Areu does not allege any facts showing that she actually "opposed" discrimination before being retaliated against. As to Carlson, she claims that she simply "refused to play along" with his alleged advances and changed the subject. Dkt. 2 ¶¶ 152–53. As to Hannity, she says that she felt "mortified," "incredibly uncomfortable," and "rattled" before "plead[ing]" with her guest to take Hannity's money. *Id.* ¶¶ 100–01. Then she "emailed the show to thank Mr. Hannity for having her on, and for the drinks." *Id.* ¶ 156. As to Kurtz, she says she "politely declined" his offer to meet her in a hotel lobby. *Id.* ¶ 116. As to Caldwell, she does not allege that she even responded to his "Take me to lunch" text. *Id.* ¶ 137. And as to Henry, she alleges only that she "did her best to change the subject" and "refused to 'play along.'" *Id.* ¶ 169. In none of these instances did Areu "oppose" the alleged statements by reporting or complaining. She did not even notify the individual defendants that she found the statements objectionable. The complaint thus fails to state a claim for retaliation based on any cognizable "protected activity."

### 2.    Areu fails to allege any plausible "causal connection" to retaliation.

Even if Areu engaged in protected activity, she fails to allege facts showing that Fox News failed to hire her *because* she rejected any purported sexual advances.

As explained above, a retaliation claim requires a causal link between the plaintiff's protected activity and the employer's retaliatory conduct. Thus, for a retaliation claim to survive a motion to dismiss, the plaintiff must still plead that "there was a causal connection between the

protected activity and the [protected] action" *Scott-Robinson v. City of New York*, 2016 WL 7378775, at *3. And if the relevant decision-makers at the company did not have "knowledge of a protected activity," then they could not retaliate against the plaintiff *because of* that activity. *Arroyo-Horne v. City of N.Y.*, 2018 WL 4259866, at *20 (E.D.N.Y. Sept. 5, 2018); *Parsons v. JPMorgan Chase Bank, N.A.*, 2018 WL 4861379, at *15 (E.D.N.Y. Sept. 30, 2018) (rejecting retaliation claim for failure to show that those "responsible for the adverse employment action . . . knew of [p]laintiff's protected activity"); *Villar v. City of N.Y.*, 135 F. Supp. 3d 105, 135 n.11 (S.D.N.Y. 2015) (similar); *Richardson v. Bronx Lebanon Hosp.*, 2014 WL 4386731, at *13 (S.D.N.Y. Sept. 5, 2014) (similar).

Here, Areu has not alleged any facts supporting a causal connection between any protected activity and Fox News's failure to hire her as a paid contributor. She does not allege that any of the individual defendants who purportedly made sexual advances had any authority to decide whether she would be hired as a paid contributor. Nor does she allege that any hiring decision-maker at Fox News had any knowledge that Areu supposedly rejected any sexual advances. For these reasons, the alleged facts do not show any causal connection between Areu's supposed rejection of sexual advances and the company's decision not to hire her.[1]

### B. Fox News Did Not Unlawfully Retaliate After Areu Filed Suit

Areu claims that, after she filed suit, Fox News retaliated against her by pursuing Rule 11 sanctions and publicly releasing e-mails that contradict her allegations. Both theories fail. For one thing, seeking Rule 11 sanctions and releasing e-mails are not unlawful retaliatory acts under the relevant statutes. And in any event, because the Federal Rules authorize parties to pursue sanctions

---

[1] Because Areu's claim for "failure to hire on the basis of gender" (Dkt. 2 ¶¶ 192, 204, 219) is redundant of her claim for *retaliatory* failure to hire (*id.* ¶¶ 198, 209, 224) it fails for the same reason.

for good cause, no party can be subject to any legal penalty for doing so. If state law sought to penalize a party for invoking Rule 11, it would be preempted. Likewise, state and federal law do not purport to prohibit parties from publicly defending themselves by releasing true copies of e-mails that rebut a plaintiff's claims. Again, if state law did purport to impose a gag order banning the publication of such undisputedly true information, it would violate the First Amendment.

To prove an unlawful retaliatory act, the plaintiff must show that the employer's actions would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Tepperwien v. Entergy Nuclear Operations, Inc*., 663 F.3d 556, 568 (2d Cir. 2011). The test must be applied "objectively, based on the reactions of a reasonable employee." *Id*. Under the NYCHRL, the question is whether the employer's conduct is "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).

Here, Areu fails to make that showing. The threat of Rule 11 sanctions would not deter a *reasonable* plaintiff from filing suit, because sanctions are available only against parties that make "unreasonable" factual allegations. *See, e.g.*, *Pereira v. 3072541 Can. Inc*., 2018 WL 5999636, at *3 (S.D.N.Y. Nov. 15, 2018) (Abrams, J.). If Areu's allegations had been objectively reasonable and supportable by evidence, then she would have had nothing to fear from a sanctions motion. As it happened, of course, Areu's allegations were entirely *un*reasonable, as her original complaint was peppered with demonstrable falsehoods. *See* Dkt. 53, at 7–9, No. 1:20-cv-5593. Areu herself tacitly admitted as much by amending her complaint to remove some of the falsehoods. *Id*. at 13–20. Although that amendment does not fully cure the Rule 11 violations, *id*., it at least acknowledges that the Fox Defendants had a solid basis for pursuing sanctions, as they identified multiple glaring inaccuracies that Areu herself recognized she had to retract.

Because the Federal Rules expressly authorize parties to seek sanctions as appropriate under Rule 11, doing so cannot be punished as unlawful "retaliation." Under the Supremacy Clause, state law cannot impose penalties on people for taking actions that are specifically authorized by federal law. *See, e.g.*, *Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 31 (1996); *Lawrence Cnty. v. Lead-Deadwood Sch. Dist.*, 469 U.S. 256 (1985). And because there is no question that the Fox Defendants had a right to pursue sanctions under Rule 11 (regardless of whether sanctions will actually be imposed), their exercise of that federal right cannot be penalized as "retaliation" under the NYCHRL or the NYSHRL.

Nor can seeking Rule 11 sanctions be punished as retaliation under Title VII. To the contrary, it is a basic maxim of statutory interpretation that federal laws must be read in harmony, such that general prohibitions in one do not nullify specific authorizations in another. *See, e.g.*, *Radzanower v. Touche Ross & Co*., 426 U.S. 148, 155 (1976). For that reason, Title VII's general anti-retaliation provision cannot sensibly be read to prohibit defendants from pursuing sanctions as specifically authorized under Rule 11. *See, e.g.*, *Horen v. Bd. of Educ. of City of Toledo Pub. Sch. Dist*., 2012 WL 3808902, at *5 (N.D. Ohio Aug. 8, 2012) (dismissing claim of retaliation based on sanctions request because "[w]hat plaintiff complains is retaliation is actually a process the Rules expressly allow"). Any contrary rule would repeal Rule 11 as applied to Title VII suits, contradicting numerous precedents that have recognized Rule 11 as a valuable tool to combat frivolous Title VII claims. *See, e.g.*, *Hoatson v. N.Y. Archdiocese*, 280 F. App'x 88 (2d Cir. 2008) (per curiam); *LaVigna v. WABC Television, Inc*., 159 F.R.D. 432, 435 (S.D.N.Y. 1995); *see also Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 n.4 (S.D.N.Y. 2017) (filing of motions, including a motion to strike, "as part of . . . defenses in litigation[]," not retaliatory).

Finally, it does not constitute unlawful retaliation for Fox News to release accurate copies of e-mails rebutting Areu's allegations. Dkt. 2 ¶¶ 198, 209, 224. Such defensive measures presumptively do not violate the anti-retaliation provisions of Title VII. *See, e.g., Hughes*, 304 F. Supp. 3d at 449 ("given that [the Plaintiff] was expected to charge Fox [w]ith sexual harassment claims, Defendants' attempt to blunt the inflammatory force of her allegations was a colorable defense to protect their business."); *see also United States v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996) (holding reasonable defensive measures do not violate the anti-retaliation provision of Title VII, even though such steps were adverse to the charging employee and resulted in differential treatment). Here, in particular, releasing the e-mails in question would not deter a reasonable plaintiff from filing suit because it is all but inevitable that such relevant evidence would become public through the litigation process regardless. As the Second Circuit has recognized, there is a "presumption of access" to documents produced and relied on in litigation. *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). And disclosure is especially likely here due to Areu's aggressive publicizing of the lawsuit.

In any event, it would violate the First Amendment if any state or federal anti-retaliation law purported to prohibit Fox News from disclosing true and accurate copies of e-mails to defend itself from allegations of wrongdoing. Imposing this type of speech restriction on a litigant would be akin to a gag order, which would run afoul of "the First Amendment's hostility to prior restraints." *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005) (Sotomayor, J.); *see also In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018) ("[G]ag orders are presumptively unconstitutional because they are content based."). In addition, defendants have a First Amendment right to reveal investigation results to rebut allegations of wrongdoing. *See, e.g., Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 105 (2d Cir. 2000) (granting summary

judgment for defendant in defamation case where the defendant "publish[ed] in its entirety a report prepared by an outside investigator examining allegations of the defendant's wrongdoing").

## IV.     Areu Fails to State a Claim Against the Individual Defendants

The individual claims against Carlson, Hannity, and Kurtz fail because they are all derivative of the claims against the company, which should be dismissed for the reasons above. Moreover, it is clear as a matter of law that Title VII does not authorize individual liability. *See Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009). And under the NYSHRL, individual liability is available only if the "the individual defendant is considered an 'employer,'" or "aided and abetted the unlawful discriminatory acts of others." *Xiang v. Eagle Enters., LLC*, 2020 WL 248941, at *5 (S.D.N.Y. Jan. 16, 2020). There is no allegation here that the individual defendants themselves were "employers." And they cannot be held liable for "aiding and abetting" (Dkt. 2 ¶¶ 215, 230), because that would nonsensically deem them to be accessories to their own alleged conduct. This Court has recognized that such a claim is impermissible. "[A]s a matter of law as well as logic, 'an individual cannot aid or abet his or her own violation of the Human Rights Law.'" *Bliss v. MXK Rest. Corp.*, 220 F. Supp. 3d 419, 426 (S.D.N.Y. 2016) (citation omitted). The NYCHRL authorizes liability against individual defendants "if they participate in the conduct giving rise to a discrimination claim." *Deveaux v. Skechers USA, Inc.*, 2020 WL 1812741, at *5 (S.D.N.Y. Apr. 9, 2020). Yet here, none of the individual Defendants participated in conduct that "give[s] rise to a [discrimination] claim." *Id.* at *6. Thus, even if the claims against the company somehow could survive, the claims against the individual defendants should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Areu's claims against Fox News, Tucker Carlson, Sean Hannity, and Howard Kurtz.

Dated:  October 19, 2020

By:      */s/ Kathleen M. McKenna*
          Kathleen M. McKenna, Esq.
          Lloyd B. Chinn, Esq.
          Keisha-Ann G. Gray, Esq.
          Danielle J. Moss, Esq.
          Yonatan L. Grossman-Boder, Esq.
          PROSKAUER ROSE LLP
          Eleven Times Square
          New York, New York 10036-8299
          (212) 969-3000
          kmckenna@proskauer.com

          Anthony J. Dick
          J. Benjamin Aguiñaga
          Ariel N. Volpe
          JONES DAY
          51 Louisiana Ave., NW
          Washington, DC 20001
          Tel. (202) 879-3939
          Fax. (202) 879-1700
          E-mail: ajdick@jonesday.com

          *Attorneys for Defendants*
          *Fox News Network, LLC, Tucker Carlson,*
          *Sean Hannity, and Howard Kurtz*